# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | } | |
| HB LOGISTICS, LLC, | } | CASE NO.  11-82362-JAC-11 |
| | } | |
| | } | CHAPTER  11 |
| Debtor(s). | } | |
| | | |
| HB LOGISTICS, LLC, | } | AP NO.  12-80124-JAC-11 |
| | } | |
| Plaintiff(s), | } | |
| v. | } | |
| | } | |
| PILOT TRAVEL CENTERS, LLC, et al., | } | |
| | } | |
| Defendant(s). | } | |

## MEMORANDUM OPINION

This adversary proceeding is before the Court on the parties' cross-motions for summary on: (1)  debtor's claims that payments made to Pilot Travel Centers, LLC ("Pilot") during the preference period beginning April 9, 2011 through July 8, 2011, the petition date, are preferential transfers pursuant to 11 U.S.C. § 547(b); and (2) Pilot's new value defense under § 547(c)(4).

The parties filed a Joint Stipulation of Facts, ECF 75, in which they agree that the debtor made certain transfers during the preference period to Pilot totaling $2,416,003.29. The parties further stipulate that during this same time period Pilot provided the debtor with fuel in the amount of $2,372,127.09 which the debtor used in its business.  Pilot concedes that the transfers by the debtor are preferential transfers pursuant to § 547(b).  Pilot has withdrawn its motion for summary judgment to the extent Pilot argues that the transfers were

made in the ordinary course of business pursuant to § 547(c)(2) and reserves the adjudication of its ordinary course of business defense for trial. Additionally, there are two payments that the debtor asserts it made to Pilot during the preference period to which Pilot has not stipulated – one made on June 23, 2011 in the amount of $34,609.36, and the other made on June 24, 2011 in the amount of $22,743.72. Pilot alleges that the transfers were reversed due to insufficient funds being in the debtor's bank account. Because the parties have not stipulated with respect to these transfers, same will be reserved for trial along with the ordinary course of business defense.

At this time, the only issue before the Court is the extent to which Pilot may rely on the subsequent new value defense provided by § 547(c)(4), which reads:

> (c) The trustee may not avoid under this section a transfer–
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor –
> (A) not secured by an otherwise unavoidable security interest; and
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor[.]

There are two prevailing approaches for determining whether a creditor is entitled to the new value defense under § 547(c)(4) – the "remains unpaid" approach, and the "subsequent advance" approach. Under the remains unpaid approach, the new value must remain unpaid at the end of the preference period in order to be used by the creditor to offset its preference liability.[1] The Eleventh, Third and Seventh Circuits have been characterized

---

[1] *Wahoski v. American & Efrid, Inc. (In re Pillowtex Corp.)*, 416 B.R. 123, 127 (Bankr. D. Del. 2009).

2

as following the remains unpaid approach.[2]   "The subsequent advance approach has been adopted by the Fourth, Fifth and Ninth Circuits and requires that new value not have been paid by or secured by an unavoidable transfer, which essentially follows the text of the statute."[3]

The debtor argues that Pilot is limited by the "remains unpaid" requirement recited in *Charisma Investment Co.  v.  Airport Systems, Inc.  (In re Jet Florida System, Inc.)*, 841 F.2d 1082 (11th Cir.  1988).  In *Jet Systems Florida, Inc.,* the issue before the Eleventh Circuit was whether a lessor's forbearance in terminating a lease following the debtor's default  constituted "new value" for purposes of the subsequent advance exception under § 547(c)(4).   The court of appeals explained that § 547(c)(4) has "generally been read to require (1) that the creditor must have extended the new value after receiving the challenged payments, (2) that the new value must have been unsecured, and (3) that the new value must remain unpaid."[4]

Although the Eleventh Circuit has been cited as having adopted the remains unpaid approach, a Georgia bankruptcy court  recently called into doubt whether the Eleventh

---

[2]        *Charisma Investment Co.  v.  Airport Systems, Inc.  (In re Jet Florida System, Inc.)*, 841 F.2d 1082 (11th Cir.  1988); *New York city Shoes, Inc.  v.  Bentley Int'l, Inc., (In re New York City Shoes, Inc.)*, 880 F.2d 679 (3rd Cir. 1989); and *Matter of Prescott,* 805 F.2d 719 (7th Cir. 1986).

[3]        *TI Acquisition, LLC v.  Southern Polymer, Inc.  (In re TI Acquisitions, LLC)*, 429 B.R. 377 (Bankr. N.D. Ga.  2010).

[4]        *Charisma Investment Co.  v.  Airport Systems, Inc.  (In re Jet Florida System, Inc.)*, 841 F.2d 1082, 1083 (11th Cir.  1988).

Circuit has officially adopted the approach.[5]  Instead, the court explained that the language

used by the Eleventh Circuit in *Jet Florida System, Inc.* is "best viewed as shorthand for the

text of § 547(c)(4)."[6]  Other courts and commentators have explained that the Eleventh

Circuit's reference to "remains unpaid" was stated in dicta as the  only issue before the court

was whether a landlord had provided new value to the debtor by continuing to make a leased

premises available to the debtor after the debtor's default.[7]

The remains unpaid approach has likewise been called into doubt by a Delaware

bankruptcy court in the Third Circuit.  In *Wahoski v.  American & Efrid, Inc.  (In re

Pillowtex Corp.)*, 416 B.R. 123, 127 (Bankr.  D.  Del.  2009), the bankruptcy court stated that

most courts that are cited as requiring that subsequent new value remain unpaid, including

both the Eleventh Circuit and Third Circuit, "'have not actually held as much, but, . . .  have

only repeated that requirement in *dicta.'*" While recognizing that it was bound by the Third

Circuit's decision in *New York City Shoes, Inc.  v.  Bentley Int'l, Inc.  (In re New York City

Shoes, Inc.)*, 880 F.2d 679 (3rd Cir.  1989) which has been credited as following the remains

unpaid approach, the *Pillowtex* court distinguished the Third Circuit's decision which

involved a single transfer during the preference period from the facts before the bankruptcy

---

[5]        *TI Acquisition, LLC v.  Southern Polymer, Inc.  (In re Ti Acquisitions, LLC)*, 429 B.R. 377, 383 (Bankr.
N.D. Ga.  2010).

[6]        *Id.*  at 384.

[7]        TRAVIS POWERS, INADEQUATE SHORTHAND: THE CIRCUIT COURTS ARE SPLIT AS TO WHETHER THERE
IS A "REMAINS UNPAID" REQUIREMENT IN THE NEW VALUE EXCEPTION TO PREFERENCE LIABILITY, 22 J.  BANKR.  L &
PRAC.  4 ART.  5 (2013); *Hyman v.  Stone Lumber Co.  (In re Winder Haven Truss Co.)*, 154 B.R. 592 (Bankr.  M.D. Fla.
1993).

4

court which involved a "running account" or "rolling account" between the debtor and creditor. Likewise, the facts in the Eleventh Circuit's *Jet Florida System, Inc.* case involved a single transfer and the case is, therefore, not clearly on point with the facts of the case before the Court which involves numerous transfers on a "running account" basis between the parties.[8] The Delaware bankruptcy court further took into account the subsequent development of decisional law during the twenty year period following the *New York City Shoes* case.

Indeed, each of the circuit court cases which are cited as following the remains unpaid approach were issued during the 1980's not long after the adoption of the Bankruptcy Code in the 1978 Bankruptcy Reform Act. Prior to the adoption of the Code, preferential transfers were governed by § 60 of the Bankruptcy Act of 1898.[9] As is the case in the Bankruptcy Code, the Act contained an exception to preference avoidance which limited the amount of the new value setoff to "such new credit remaining unpaid."[10] Since the enactment of § 547(c)(4), the Code no longer contains the phrase "remaining unpaid." Instead, § 547(c)(4) only deprives a creditor of the new value exception "to the extent that (1) new value is

---

[8] *McNeal v. GMAC Mortgage, LLC (In re McNeal)*, 735 F.3d 1263 (11th Cir. 2012)(explaining that a later panel of the court of appeals could depart from an earlier's panel's decision only when an intervening Supreme Court decision is clearly on point).

[9] TRAVIS POWERS, INADEQUATE SHORTHAND: THE CIRCUIT COURTS ARE SPLIT AS TO WHETHER THERE IS A "REMAINS UNPAID" REQUIREMENT IN THE NEW VALUE EXCEPTION TO PREFERENCE LIABILITY, 22 J. BANKR. L & PRAC. 4 ART. 5 (2013).

[10] *Id.*

secured by an otherwise unavoidable security interest; or (2) after new value is advanced, the debtor makes a transfer to the creditor that is otherwise unavoidable."[11]

Given the development in the case law following the Eleventh Circuit's decision in *Jet Florida System, Inc.* which was issued twenty-five years ago*, the fact that the "remains unpaid" language is dicta in *Jet Florida System, Inc.* as the court of appeals was not directly called upon to make a determination under § 547(c)(4)(B), and because the case is not "clearly on point" with the facts of this case which involve a rolling account situation, the Court finds that Pilot is entitled to assert the subsequent new value defense under § 547(c)(4) to the extent the new value has not been paid by an otherwise unavoidable transfer. As the parties have stipulated that the subject transfers are avoidable (i.e. not otherwise unavoidable) as a preference under § 547(b), each extension of new value provided by Pilot in the form of fuel can be used as a defense against the preferential transfers pursuant to § 547(c)(4). To allow the debtor to both avoid the preference and recover the payment for the new value provided by Pilot from which the debtor materially benefitted while denying Pilot the new value defense would not further the principal policy objections underlying the preference provisions of the Bankruptcy Code: (1) "to encourage creditors to continue extending credit to financially troubled entities while discouraging a panic-stricken race to the courthouse," and (2) "to promote equality of treatment among creditors."[12]

---

[11]    *Id.*

[12]    *Charisma Investment Co. v. Airport Systems, Inc. (In re Jet Florida System, Inc.)*, 841 F.2d 1082, 1083 (11th Cir. 1988).

Case 12-80124-JAC    Doc 82    Filed 12/13/13    Entered 12/13/13 08:52:00    Desc Main
Document    Page 6 of 7

Based upon the forgoing, the Court finds that: (1) summary judgment is due to be entered in favor of the debtor regarding to debtor's claims that the transfers to which the parties stipulated are preferential transfers pursuant to § 547(b); (2) summary judgment is due to be entered in favor of Pilot with regard to the new value defense under 11 U.S.C. § 547(c)(4). As set forth in Exhibit A to Pilot's Supplemental Brief in Support of Motion for Summary Judgment, ECF 79, the cumulative preference after crediting the subsequent new value provided by Pilot against the preferential transfers totals $53,199.07.

The Court reserves for trial Pilot's ordinary course of business defense under § 547(c)(2) and the two disputed transfers on June 3, 2011,in the amount of $34,609.32, and on June 24, 2011, in the amount of $22,743.72.

A separate order will be entered consistent with this opinion.

Done and Ordered this day December 13, 2013

/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge